UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, AtLee and Senior Judge Petty
Argued by videoconference

ROBERT ANTONIO KEENE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0425-25-3                      JUDGE MARY GRACE O'BRIEN
                                                    MARCH 3, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Baker N. Williams (Williams & Light, on brief), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Following a jury trial, the circuit court for the City of Danville convicted Robert Antonio

Keene of uttering, identity fraud resulting in a financial loss of over $1,000, and giving a false

report to a police officer.  The circuit court also later accepted Keene's conditional guilty plea to

possessing cocaine with intent to distribute.  All matters were consolidated for sentencing.  On

appeal, Keene contends that the circuit court erred by denying his pretrial motion to suppress

evidence, including the cocaine, recovered during what he maintains was an unlawful seizure of

his person and search of his car.  He also asserts that the circuit court abused its discretion by

sentencing him "to more time than was called for in the written [conditional] plea agreement."

We affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND

In November 2023 and March 2024, a grand jury indicted Keene for forgery, uttering, and identity-fraud offenses committed on April 19, 2023. The March 2024 grand jury also issued an indictment alleging that on September 6, 2023, Keene knowingly gave a false report to a police officer with intent to mislead, in violation of Code § 18.2-461(i). The circuit court presided over a jury trial for those offenses on January 30, 2025. The jury convicted Keene of uttering, identity fraud, and giving a false police report, but it acquitted him of forgery. The circuit court ordered a presentence investigation report and scheduled the matter for sentencing.

Meanwhile, a grand jury indicted Keene on two counts of possessing a controlled substance with intent to distribute. These indictments arose from an encounter with police that occurred on July 31, 2023. Keene filed a pretrial motion to suppress the evidence from that encounter. His written motion alleged that on July 31, 2023, members of the Danville Police Department detained him without reasonable suspicion and searched his vehicle without probable cause. The motion specifically alleged that the officers detained him on the belief that there was a warrant out for his arrest, which proved to be untrue. The motion added that during the encounter, one of the officers reopened Keene's car door after it was closed and inquired about an item the officer had seen in the door pocket. The motion asserted that the officer then unlawfully searched the rest of Keene's car. After a hearing, for which we have no timely filed transcript, the court entered an order denying Keene's suppression motion "for the reasons stated in the record."

At the sentencing hearing on Keene's convictions for uttering, identity fraud, and giving a false police report, Keene first entered a conditional guilty plea to one count of possessing a controlled substance with intent to distribute. According to the Commonwealth's summary of the evidence, Sergeant Langley of the Danville Police Department observed Keene on July 31,

2023, standing next to a black Hyundai Sonata on Aspen Street in Danville. Sergeant Langley believed that Keene had an outstanding warrant and approached him. Keene told Sergeant Langley that he had already been arrested on that warrant and had paperwork in his vehicle to that effect that he could show Sergeant Langley. When Keene opened the car door, Sergeant Langley observed in plain view material he believed was K2, an illegal narcotic. Sergeant Langley searched the vehicle based on his observation of the K2 and found a clear bag of white powder in the center console, which later tested positive for cocaine. He also recovered a scale and multiple cell phones containing text messages consistent with drug distribution.

According to the written terms of his conditional guilty plea, Keene and the Commonwealth agreed "to a 5 year cap on sentencing for all charges" which was at the "high end of [the] guidelines"—referring specifically to the range of punishment recommended by the Virginia Criminal Sentencing Guidelines for all four convictions that were before the court for sentencing.[2]

Upon the conclusion of the sentencing/guilty-plea hearing, the circuit court sentenced Keene to 10 years of incarceration for uttering, 5 years for identity fraud, and 15 years for possession with intent to distribute. The court also imposed a $500 fine for giving a false police report. The court then suspended 8 years of the 10-year sentence Keene received for uttering (i.e., leaving a 2-year active sentence), 2 years of the 5-year sentence he received for identity fraud (i.e., leaving a 3-year active sentence), and 10 years of the 15-year sentence he received for possession with intent to distribute (i.e., leaving a 5-year active sentence). The circuit court then ran his 5-year active sentence for possession with intent to distribute concurrently with his other 2 active sentences, giving Keene only 5 years of actual incarceration to serve.

---

[2] Keene's sentencing guidelines recommended a range of punishment from 3 years at the low end to 5 years at the high end.

The court entered its sentencing order on March 7, 2025. On March 24, 2025, Keene filed a "Motion to Resentence Pursuant to Written Plea Agreement," asserting that although his sentences for uttering, identity fraud, and possession with intent to distribute were run concurrently, "the active time in this case . . . doubled the time agreed to in the written plea agreement, which was accepted by this [c]ourt." Keene asked the court to modify his sentence. On March 26, 2025, and while the circuit court still had jurisdiction over Keene's sentence under Rule 1:1, the circuit court noted its denial of the motion by hand on the first page of Keene's written motion.[3] Keene appeals.

ANALYSIS

I. Motion to Suppress

"The transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court no later than 60 days after entry of the final judgment." Rule 5A:8(a). "This deadline may be extended by a judge of this Court only upon a written motion filed within 90 days after the entry of final judgment." *Id.* "Timely motions will be granted only upon a showing of good cause to excuse the delay." *Id.* "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (alterations in original)

---

[3] The circuit court also entered an order denying the motion on March 31, 2025, but by then had lost jurisdiction to enter the order because more than 21 days had passed since the entry of the March 7 sentencing order. *See* Rule 1:1(a) ("All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."). Although the court did not enter a denial order within 21 days, the Commonwealth does not dispute that the court timely noted its denial by hand on Keene's written motion before losing jurisdiction.

(quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). "This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (quoting *Turner*, 2 Va. App. at 99); *see also Bay*, 60 Va. App. at 528-29.

The circuit court entered final judgment on March 7, 2025. Under Rule 5A:8(a), the transcripts were originally due on or before May 6, 2025—60 days after the final order. This Court granted Keene an extension until June 5 to file the transcripts or a statement of facts in lieu of a transcript. *See* Rule 5A:3(c). But Keene did not file the transcript from the suppression hearing until June 6, nor did he file an additional motion for an extension of time. Thus, because Keene did not timely file the transcript, we cannot consider it to evaluate this assignment of error. We must therefore consider whether the transcript is indispensable to resolving Keene's motion-to-suppress challenge. *See Bay*, 60 Va. App. at 529; *Shiembob*, 55 Va. App. at 246.

Keene asserts that the circuit court erred by denying his motion to suppress. He first complains that Sergeant Langley unlawfully detained him by suggesting he would be taken to the magistrate even though Keene was not engaged in any criminal activity, not exhibiting any suspicious behavior, and not subject to an active arrest warrant. Keene also argues that Sergeant Langley lacked probable cause to search his vehicle.

The Commonwealth maintains that the encounter was consensual until Sergeant Langley saw the K2 in plain view from where he stood next to Keene's car, which provided probable cause to search the car. Although Sergeant Langley's body camera is in the record, without the transcript of the suppression hearing, this Court cannot ascertain whether the footage was played for the judge and, if so, whether the Commonwealth and Keene had an opportunity to question Sergeant Langley—by way of direct and cross-examination—about what took place. Without the transcript, we also cannot ascertain the parties' specific arguments or the court's factual findings. Indeed, in the order from the hearing, the circuit court denied Keene's suppression motion "*for the reasons*

- 5 -

*stated in the record.*" (Emphasis added). Because this Court cannot consider the untimely transcript, we have no way of determining the accuracy of the circuit court's findings or the correctness of its rulings. We also cannot determine whether Keene preserved his assignments of error for appeal with the specificity required by Rule 5A:18.[4]

The late transcript is indispensable to resolving the issues Keene has raised, and therefore we do not consider his assignment of error. *See Shiembob*, 55 Va. App. at 246 (finding that failure to file indispensable transcripts waived arguments on appeal); *see also White v. Morano*, 249 Va. 27, 30 (1995) ("If an insufficient record is furnished, the judgment appealed from will be affirmed."). Accordingly, we affirm the circuit court's denial of Keene's suppression motion.

## II. Motion to Modify Sentence[5]

Rule 3A:8 provides that a defendant, his attorney, and the attorney for the Commonwealth may enter into a plea agreement by which the attorney for the Commonwealth agrees "that a specific sentence is the appropriate disposition of the case." Rule 3A:8(c)(1)(C). Moreover, "[i]f a

---

[4]    Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity: "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it."

*Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

[5] Keene filed a post-trial motion to modify his sentence but did not seek a hearing on his motion before the circuit court lost jurisdiction. *See* Rule 1:1(a). Thus, the record does not contain a transcript to assist us with this assignment of error. However, by hand-written notation on the face of Keene's motion, the circuit court timely denied it before losing jurisdiction over the matter. Without a hearing memorializing the arguments and objections made by the attorneys and any factual findings made by the court, left for our consideration are the plea agreement itself, the final sentencing order, and the assertions made in Keene's written motion. We find that these documents are sufficient for our review of this matter. *See Veldhuis v. Abboushi*, 77 Va. App. 599, 607 (2023) (reaching merits despite lack of transcript because it was possible "to dispose of the case by considering other portions of the record").

plea agreement has been reached by the parties, it must, in every felony case, be reduced to writing, signed by the attorney for the Commonwealth, the defendant, and, in every case, his attorney, if any, and presented to the court." Rule 3A:8(c)(2). The circuit court's role "in a plea agreement context is that of a ratifier or rejector." *Thomas v. Commonwealth*, 303 Va. 188, 201 (2024). "[I]f a plea agreement is accepted by the trial judge, then the disposition of the case must be in accordance with the plea agreement." *Wolfe v. Commonwealth*, 1 Va. App. 498, 499 (1986).

To that end, "[a] circuit court's interpretation of a plea agreement is governed by the law of contracts and is a matter of law subject to *de novo* review." *Bardales v. Commonwealth*, 71 Va. App. 737, 743 (2020). Plea agreements "are subject to due process safeguards which require that the government strictly adhere to the terms of its agreement." *Id.* (quoting *Commonwealth v. Sluss*, 14 Va. App. 601, 604 (1992)). "To the extent that factual findings of the circuit court are part of the analysis, we cannot disturb factual findings made by the circuit court unless they are plainly wrong." *Id.*

"Once accepted, courts generally treat plea agreements as binding contracts." *Griffin v. Commonwealth*, 65 Va. App. 714, 718 (2016); *see also Wright v. Commonwealth*, 49 Va. App. 58, 62 (2006) ("[B]asic rules of contract law apply to plea agreements."). "The fundamental question before [an appellate court] in construing a contract is 'what did the parties agree to as evidenced by their contract,' and the 'guiding light' for such construction is 'the intention of the parties as expressed by them in the words they have used.'" *RECP IV WG Land Invs. LLC v. Capital One Bank USA, N.A.*, 295 Va. 268, 283 (2018) (quoting *Schuiling v. Harris*, 286 Va. 187, 192 (2013)). "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Id.* (quoting *City of Chesapeake v. Dominion SecurityPlus Self Storage, L.L.C.*, 291 Va. 327, 335 (2016)). We "must interpret the agreement as written[,] and we are not free to rewrite its terms." *Mgmt. Enters., Inc. v. Thorncroft Co.*, 243 Va. 469, 472 (1992).

In this case, the plea agreement provided, in unambiguous terms, that Keene "plead[ed] conditionally guilty" to one count of possession with intent to distribute, "reserving [his] right to appeal [the] suppression issue," and the Commonwealth agreed to dismiss a second indictment for that offense. The plea agreement further provided that Keene and the Commonwealth agreed "to a 5 year cap on sentencing for *all* charges," which was at the "high end of [the] guidelines" for his convictions. (Emphasis added). By referring to the sentencing guidelines, the plea agreement reflected that the 5-year cap applied to the time Keene would actually serve. *See* Code § 17.1-803(1) (establishing a commission to develop "discretionary sentencing guidelines" based on "historical data . . . concerning *time actually served* for various felony offenses" (emphasis added)); Code § 17.1-805(A) (directing commission to adopt "discretionary felony sentencing guidelines" based on "computing the *actual time-served* distribution for similarly situated offenders" (emphasis added)). Indeed, Keene's sentencing guidelines, included in the record, listed all four offenses and recommended a range of actual incarceration to serve for these crimes.

Additionally, paragraph 5 of the plea agreement stated that "[a]fter sentencing[,] probation *may or may not be* granted, and . . . the Court *may* order all sentences to be served consecutively, that is, one after the other." (Emphases added). The agreement did not require, as it could have under Rule 3A:8, that the circuit court impose a specific sentence upon Keene or run his sentences consecutively; nor did it preclude the court from allowing Keene to serve any of his sentences concurrently. *See* Code § 19.2-308 (authorizing courts to exercise discretion to run sentences concurrently). The final sentencing order shows that the circuit court imposed a sentence for each conviction within the range of punishment set by the legislature,[6] suspended some of that time, and then ran the remaining active sentences concurrently, resulting in 5 years of actual incarceration to

---

[6] *See* Code §§ 18.2-10, 18.2-172, 18.2-186.3, and 18.2-248.

serve as contemplated by the plea agreement. Keene therefore received a sentence consistent with the terms of his agreement.

Keene nevertheless points out that the court suspended only 20 years of a 30-year total sentence, and he insists that the 10 years of unsuspended time violated the plea agreement's 5-year cap. But the plea agreement did not address the total sentences to be imposed or the period of suspension to be fixed by the court; instead, it capped the years of actual incarceration to serve. By running the active sentences concurrently, the circuit court ordered that they be served at the same time. Thus, contrary to Keene's assertion, the 10 years of unsuspended time did not violate the plea agreement—as Keene only received 5 years of actual incarceration to serve.

In short, by its plain terms, the plea agreement gave the circuit court the discretion to impose an active sentence upon Keene that did not exceed 5 years of actual service in prison. In the final sentencing order, the circuit court—in suspending 20 years of Keene's 30-year sentence and then running his sentence for possession with intent to distribute concurrently with his uttering and identity-fraud sentences—gave him 5 years of incarceration to actually serve, as contemplated by the agreement. We therefore find no error in the sentence.

CONCLUSION

For these reasons, we affirm the judgment.

*Affirmed.*